# EXHIBIT 1

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THIS AGREEMENT IS LEGALLY BINDING ONCE EXECUTED.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REAL ESTATE PURCHASE AND SALE AGREEMENT**

THIS REAL ESTATE PURCHASE AND SALE AGREEMENT ("**Agreement**") is entered into as of January _____, 2025 ("**Effective Date**"), by and between OLDE TOWN APARTMENTS OWNER, LLC, an Illinois limited liability company having an address at 700 Bruns Lane, Springfield, Illinois 62707 ("**Seller**") and Jero Holdings LLC, a New York limited liability company having an address at 388 Kenridge Road, Lawrence, New York 11599 ("**Purchaser**").

WHEREAS, Seller is the fee simple owner to property located 700 Bruns Lane, Springfield, Illinois 62707 (the "**Property**");

WHEREAS, Seller desires to sell the Property to Purchaser, and Purchaser desires to purchase such Property from Seller, subject to the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants set forth in this Agreement, Seller and Purchaser agree as follows:

1. <u>Sale and Purchase</u>.  For the consideration and upon the terms and conditions of this Agreement, on the Closing date, Seller shall sell, transfer, assign, convey and deliver to Purchaser, and Purchaser shall acquire from Seller the following:

    (a) Title to that certain parcel of real estate located in the City of Springfield, County of Sangamon State of Illinois, legally described in <u>Exhibit A</u> attached hereto, commonly known 700 Bruns Lane, Springfield, Illinois 62707 ("**Property**").

2. <u>Purchase Price</u>.  The purchase price (the "**Purchase Price**") for the Property shall be Two Million Eight Hundred Thousand Dollars and No Cents ($2,800,000.00), and shall be paid by wired funds at Closing, plus or minus pro-rations, as provided in this Agreement.

3. <u>Earnest Money</u>.  Within two (2) business days from Effective Date, pursuant to a strict joint order escrow ("**Escrow Account**"), Purchaser shall wire to _____ ("**Title Company**"), pursuant to the Escrow Account the amount of Twenty-Five Thousand Dollars and No Cents ($25,000.00) ("**Earnest Money**"), which amount will be applied to the Purchase Price at Closing.  Purchaser acknowledges that the Earnest Money is non-refundable except as terminated under Sections 8(c) and 12 below.

4. <u>No Representations or Warranties; AS IS Condition</u>.

(a) Purchaser warrants, acknowledges and agrees with Seller that Purchaser is purchasing the Property in its "AS IS/WHERE IS" condition, "WITH ALL FAULTS" and with all physical latent or patent defects, and specifically and expressly without any warranties, representations or guarantees, either express or implied, of any kind, nature or type whatsoever from or on behalf of the Seller. Purchaser acknowledges that Purchaser has not relied and is not relying upon any information, document, sales brochures or other literature, maps or sketches, projection, pro forma statement,

representation, guarantee or warranty (whether express or implied, or oral or written, material or immaterial) that may have been given by or made by or on behalf of the Seller.

(b) Purchaser hereby acknowledges that it shall not be entitled to, and shall not rely on the Seller or its agents as to (i) the quality, nature, adequacy or physical condition of the Property including, but not limited to, appurtenances, access, landscaping, parking facilities, sewage or utility systems, or facilities at the Property, if any; (ii) the quality, nature, adequacy or physical condition of soils or ground water at the Property; (iii) the existence, quality, nature, adequacy or physical condition of any utilities serving the Property or available at its boundaries; (iv) the development potential of the Property, its habitability, merchantability of fitness, suitability or adequacy of the Property for any particular purpose; (v) the zoning or other legal status of the Property, including but not limited to, condemnation or threat of condemnation; (vi) the Property's operational compliance with any applicable codes, laws, regulations, statutes, ordinances, covenants, conditions or restrictions of any governmental or quasi-governmental entity; (vii) the Property's operational compliance with any applicable labor laws or building codes concerning labor and material used or incorporated into the Property or any other labor or materials relating in any way to the Property; or (viii) the condition of title to the Property or the nature, status and extent of any right of way, lease, right of redemption, possession, lien, encumbrance, license, reservation, covenant, condition, restriction or any other matter affecting title to the Property except as may be set forth in the owner's policy.

(c) Purchaser acknowledges and agrees with Seller that with respect to the Property Seller has not, does not and will not make any warranties or representations, express or implied, or arising by operation of law, including, but in no way limited to, any warranty of condition, merchantability, habitability or fitness for a particular use, or with respect to the value, profitability or marketability of the Property. Purchaser acknowledges that Seller has not, does not and will not make any representation or warranty with regard to existence or non-existence at any time or hazardous waste or substances in the Property or on, at or under the surface of the Property or with regard to compliance with any environmental protection, pollution or land use laws, rules, regulation, orders or requirements including, but not limited to, those pertaining to the handling, generating, treating, storing or disposing of any hazardous waste or substance, lead based paint or radon.

(d) Purchaser acknowledges that it is Purchaser's responsibility to undertake such due diligence and to make such legal, factual and other inquiries and investigations as Purchaser deems necessary, desirable or appropriate with respect to acquiring the Property. Such inquiries and investigations may include, but shall not be limited to, any oral or unrecorded leases and contracts pertaining to the Property, the physical components of all portions of the Property, the condition of the Property (including the existence of any hazardous or toxic wastes or other contaminants), the existence of any wood destroying organisms on the Property, such state facts as an accurate survey and inspection would show, the present and future zoning ordinances, resolutions and regulations of the city, county and state where the Property is located and the value and marketability of the Property.

(e) In the event that the local government requires an inspection of the Property, a certificate of occupancy or other approval or certification of any kind or nature, Purchaser shall be responsible for performing such inspection and obtaining such certification or approval. Seller shall have no responsibility or obligation to correct any violations or remedy any issues of non-compliance whether now existing or hereafter arising.

(f) Without in any way limiting the generality of the preceding subparagraphs (a) through (e), Purchaser specifically acknowledges and agrees that Purchaser hereby waives, releases and

4928-1884-5318, v. 2

discharges any claim it has, might have had or may have against the Seller with respect to the condition of the Property, either patent or latent as well as Purchaser's ability or inability to obtain or maintain building permits, either temporary or final certificates of occupancy or other licenses for the use or operation of the Property, the real estate taxes or assessments now or hereafter payable thereon, the compliance with any environmental protection, pollution or land use laws, rules, regulations or requirements, and any other state of facts which exists with respect to the Property.

      5.      <u>Reserved</u>.

      6.      <u>Building Code Violations.</u>  Purchaser acknowledges building code violations exist against the Property, known or unknown.  Purchaser hereby agrees to take the Property subject to building code violations, proceedings related to building code violations but excluding fines or financial judgments related to building code violations.

      7.      <u>Title</u>.  The Seller shall convey title to the Property to the Purchaser via a Special Warranty Deed ("**Deed**") subject only to:  general real estate taxes not yet due and payable; special taxes or assessments, if any, for improvements not yet completed; installments, if any, not due at the date hereof of any special taxes or assessment for improvements heretofore completed; building lines and building restrictions; private, public and utility easements; covenants and restrictions of record as to use and occupancy; the general exceptions to the title commitment; local, state and federal laws, ordinances or governmental regulations, including but not limited to, building and zoning laws, ordinances and regulations, now or hereafter in effect relating to the Property; building code violations (excluding financial judgments or fines); pending building code violation court cases; items appearing of record or that would be shown on a survey; and existing leases or tenancies ("**Permitted Exceptions**").

      8.      <u>Survey; Title Insurance</u>.

    (a)  Purchaser, at its expense, shall be responsible for obtaining and paying for a current boundary plat of survey ("**Survey**") of the Property which Purchaser must obtain within a reasonable period prior to Closing.

    (b)      <u>Title Commitment</u>.  Title to the Property shall be good and merchantable and shall be conveyed to Purchaser free and clear of any and all liens, encumbrances, claims and interests of any kind or nature whatsoever except for the Permitted Exeptions, as defined above.

    As evidence of such title, Seller shall, at its sole cost and expense, obtain and deliver to Purchaser, within five (5) business days after the date of this Agreement, a commitment ("**Commitment**") for an ALTA 2021 owner's policy of title insurance issued by the Title Company in which Commitment the Title Company shall agree to insure, for the full amount of the Purchase Price, merchantable and marketable fee simple title to the Property in the name of Purchaser, free of all exceptions (excluding specifically the standard exceptions) except the Permitted Exceptions.  The Title Commitment shall be conclusive evidence of good title as shown thereon.

    (c)      <u>Title Objections</u>.  If the Title Commitment or, if applicable, the Survey discloses any title defects, other than the Permitted Exceptions, which are objectionable to Purchaser, Purchaser shall notify Seller of such unpermitted exceptions within five (5) business days after Purchaser's receipt of the Title Commitment ("**Title Objection Period**").  Seller shall have five (5) business days (herein "**Seller's Cure Period**") after the date of the Purchaser's objection notice either to (i) agree to remove

such exceptions or (ii) cause the Title Company to remove or insure over such defects and to furnish the Title Commitment showing such defects cured, removed or insured over.  If the title defects are not cured within Seller's Cure Period, Purchaser may, upon notice to Seller within five (5) business days thereafter and as its sole and exclusive remedy, either (i) terminate this Agreement, in which event this Agreement shall become null and void, and Seller shall cause the Earnest Money to be returned to Purchaser, or (ii) accept title in the condition set forth in the Title Commitment.  Seller may but need not attempt to remove a title exception or defect in order to facilitate the Closing, provided that under no circumstances shall Seller be obligated to cure or to remove any exception or defect to title.  If Purchaser fails to advise Seller in writing of any permitted objection to title to the Property within the Title Objection Period, Purchaser shall be deemed to have waived any such objection and shall be deemed to have approved the Title Commitment.  Matters which are not objected to by Purchaser within the Title Objection Period shall be added to the Permitted Exceptions, except that Purchaser shall have deemed to automatically object to any monetary judgments or liens, mechanics liens, and building code financial judgments or fines.

(d) Owner's Title Policy.  At Closing, Seller, at Seller's expense, shall deliver to Purchaser an ALTA owner's title insurance policy in the amount of the Purchase Price showing Purchaser in title to the Property subject only to the Permitted Exceptions.

9. Prorations and Credits.

(a) Real Estate Taxes.  Real estate taxes shall be prorated through the day of Closing between Seller and Purchaser on the basis of 100% of the most recently ascertainable taxes relating to the Property.  The parties agree that there shall be no reproration of real estate taxes and that all real estate tax prorations shall be final at Closing.

(b) Other Prorations.  Water, sewer and other utilities relating to the Property shall be paid or prorated at Closing. To the extent final readings cannot be obtained it shall be assumed that utility charges were uniformly incurred during the billing period prior to the Closing.  The parties agree that there shall be no reproration of such items and that all said items shall be final at Closing.

10. Closing; Location.

(a) The closing (the "**Closing**") of the sale of the Property shall occur at offices of the Title Company as mutually agreed by the parties, on or before thirty (30) days after the expiration of the Condition Precedent period, unless otherwise terminated in accordance with the terms of this Agreement.

(b) Escrow Closing.  This transaction shall be closed through an escrow with the Title Company, in accordance with the general provisions of the usual form of Deed and Money Escrow Agreement then in use by the Title Company, with such special provisions inserted in the escrow agreement as may be required to conform with this Agreement.  Upon the creation of such an escrow, anything herein to the contrary notwithstanding, payment of Purchase Price and delivery of Deed shall be made through the escrow and this Agreement and the Earnest Money shall be deposited in the escrow.

11. Deliveries at Closing.

(a) At Closing, Purchaser shall deliver or cause to be delivered to Seller the following:

    (i) Wired funds to the Title Company in the amount of the Purchase Price, less any applicable credits plus any costs or expenses allocated to Purchaser; and

    (ii) Evidence reasonably satisfactory to Seller and Title Company that the person executing the closing documents on behalf of Purchaser has full right, power, and authority to do so.

(b) At Closing, Seller shall deliver or cause to be delivered to Purchaser the following:

    (i) Special Warranty Deed to the Property, together with appropriate real estate transfer declaration forms;

    (ii) The title insurance policy as provided in Section 7(d);

    (iii) Certificate as provided in the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA);

    (iv) Evidence reasonably satisfactory to Purchaser and Title Company that any person executing the closing documents on behalf of Seller is properly authorized to do so;

    (v) ALTA and Gap Statement;

    (vi) Bill of Sale, in reasonable form, executed by Seller, conveying to Purchaser personal property in the Property with a warranty of title and authority to convey; and

    (vii) Closing Statement, executed by both Seller and Purchaser, as prepared by the Title Company and approved by both Seller and Purchaser in advance of Closing.

12.    Conditions Precedent. Each of Seller's obligation and Purchaser's obligation to close the transaction provided for in this Agreement shall be subject to the following conditions precedent to Closing, (the "**Condition Precedent**"):

(a) Purchaser obtaining financing to pay the balance on the Purchase Price. The terms of the financing must be acceptable to and approved by the Purchaser who shall not unreasonably withhold such approval. In the event that the Purchaser fails to obtain financing within the time allotted, this Agreement shall automatically be terminated and all funds paid by the Purchaser shall be returned to the Purchaser after deducting all reasonable costs incurred by the Seller in good faith in relation to this Agreement.

(b) The entry of a final and non-appealable Order entered in the case captioned as, In re Olde Town Apartments Owner, LLC, Case No. 25-70986, by the United States Bankruptcy Court for the Central District of Illinois.

(c) Purchaser's receipt of a written determination, letter, or permit approval from the City of Springfield, Illinois (the "City") stating that (i) the Property may be rehabilitated and occupied following completion of rehabilitation, and (ii) such rehabilitation may proceed under the building, zoning, and life-safety requirements applicable to the Property under the City's prior code status (i.e., "grandfathered" under the code in effect before any subsequently adopted code changes), subject only to compliance with any specifically listed upgrades required by the City.

(d) Purchaser's receipt of written evidence that all demolition-related actions, cases, or administrative proceedings concerning the Property, including any demolition orders or citations issued by or pending before the City or any court or administrative body (collectively, the "Demolition Cases"), have been dismissed with prejudice and all demolition orders vacated.

In the event Buyer does not send written notice to Seller that all Contingent Precedents are either satisfied or waived within sixty (60) days from the Effective Date, then this Agreement shall automatically terminate, Buyer shall receive a return of the Earnest Money, and neither party shall have any further obligations to the other except for such that service termination of this Agreement.

13. <u>Closing Expenses</u>.  Seller will pay the cost for the title owner's policy (excluding extended coverage).  Purchaser shall the State and County real estate transfer tax, the title company closing, escrow, and gap fees, the fee for any endorsements to the title policy including extended coverage, cost of recording the deed and, if applicable, any mortgage, and any charges related to a money lender's escrow or mortgage policy.

14. <u>Representations by Seller</u>. Seller represents and warrants to Purchaser as follows:

(a) Seller has the requisite power and authority to enter into and perform this Agreement and to execute and deliver Seller's closing documents.

(b) Seller is not a "foreign person", "foreign partnership", "foreign trust" or "foreign estate", as those terms are defined in Section 1445 of the Internal Revenue Code.

(c) Seller has not entered into any contracts, arrangements, licenses, concessions, easements, service arrangements, agreements, brokerage agreements or other contracts or agreements, either recorded or unrecorded, written or oral, affecting the Property or any portion thereof, or the use thereof.

(e) Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Illinois.

(f) Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby will: (i) result in a breach of, or default, under any agreement to which Seller is a party or by which the Property is bound, or (ii) violate any restrictions which Seller is subject.

(g)     Seller has not received any notice from any governmental authority regarding the presence of any Hazardous Substance, any present or past generation, recycling, reuse, sale storage handling transport and/or disposal of any Hazardous Substance or any failure to comply with any applicable local, state or federal environmental laws, regulations, ordinances or administrative or judicial orders relating to the generation, recycling, reuse, sale storage handling transport and/or disposal of any Hazardous Substance.  As used herein, the term "**Hazardous Substance**" means any substance or material defined or designated as a hazardous or toxic waste material or substance, or other similar term by any federal, state or local environmental statute, regulation or ordinance presently or hereinafter in effect, as such statute, regulation or ordinance may be amended from time to time.

15.     Representation by Purchaser.  Purchaser represents and warrants to Seller that Purchaser has the requisite power and authority to enter into and perform this Agreement and to execute and deliver Purchaser's closing documents.

16.     Reserved.

17.     Condemnation.  In the event of any threatened, commenced or consummated proceedings in eminent domain affecting all or a material portion of the Property prior to Closing, Purchaser may, at its option, by delivering written notice to Seller within ten (10) days after Purchaser becomes aware or is notified of such proceedings, either (a) terminate this Agreement, in which the Earnest Money shall be refunded to Purchaser, or (b) accept the Property subject to the proceedings, in which event Seller shall assign to Purchaser at Closing its entire right, title and interest to any condemnation award.

18.     Default; Remedies.

(a)     Seller Default.  If Seller defaults in its material obligations hereunder and provided Purchaser is not in default under this Agreement, Purchaser shall have the right, as its sole and exclusive remedy, to i) terminate the Agreement and receive the return of the Earnest Money and, in that event, the parties shall have no further obligation to each other, or ii) initiate litigation for specific performance only.

(b)     Purchaser Default.  In the event Purchaser shall fail to comply with any of its material obligations hereunder on or prior to the Closing, the Earnest Money shall be paid to Seller as liquidated damages in lieu of all other remedies available to Seller, and this Agreement shall become null and void with neither party having any further rights or liabilities hereunder, with the exception of any indemnification or other obligations of Purchaser as expressly provided in this Agreement.

(c)     Liquidated Damages.  Seller and Purchaser acknowledge and agree that (i) it would be extremely difficult to accurately determine the amount of damages suffered by Seller as a result of Purchaser's default hereunder; (ii) the Earnest Money is a fair and reasonable amount to be retained by Seller as agreed and liquidated damages for Purchaser's default under this Agreement; and (iii) retention by Seller of the Earnest Money upon Purchaser's default hereunder shall not constitute a penalty or forfeiture.

19.     Real Estate Broker.  Each party hereby represents and warrants to the other party that it has not submitted this transaction to any broker, finder or other agent (the "**Broker**") so as to cause

any broker, finder or agent other than the Broker to be entitled to a broker's or finder's fee or commission with respect to this transaction. Each party hereby agrees to indemnify and hold the other free and harmless from and against all loss, cost, and injury suffered as a result of either party's breach of the foregoing warranty.

20. <u>Notices</u>. Any notice required or permitted to be delivered under this Agreement shall be deemed to be delivered (a) whether or not actually received, when deposited in the United States mail, postage prepaid, certified or registered mail, return receipt requested, (b) when received, if delivered personally or sent by a nationally recognized overnight carrier, all charges prepaid, or (c) when received, when sent by electronic transmission and addressed to the Seller or Purchaser, or their respective attorneys, as the case may be, at the addresses set forth below or at such other address as such party may designate by written notice to the other:

To the Seller:

With a copy to:      Weissberg and Associates, LTD.
Attn: Ariel Weissberg
125 South Wacker Drive, Suite 300
Chicago, Illinois 60606
Email: ariel@weissberglaw.com

To the Purchaser:      Jero Holdings LLC
Attn: Ephraim Obadia
388 Kenridge Road
Lawrence, New York 11599
Email: ephraim@jeroholdings.com

With a copy to:      Howard & Howard Attorneys PLLC
Attn: Christopher A. Cali
180 N. Stetson Avenue, Suite 1400
Chicago, Illinois 60601
Email: cac@h2law.com

21. <u>Entire Agreement</u>. This Agreement contains the entire agreement between Seller and Purchaser concerning the sale of the Property, and no statement, agreement, representation, or understanding shall be binding on either party unless it is contained in this Agreement. No modification of this Agreement shall be binding on either party unless in writing and signed by the party to be bound.

22. <u>Risk of Loss; Insurance.</u> Risk of loss of the Property will remain with Seller until the Closing.

23. <u>Miscellaneous</u>.

(a) <u>Assignment</u>. Purchaser shall be entitled to assign its rights hereunder in whole or in part; provided, however, that in event of any such assignment, Purchaser shall not be released from any or all of its obligations hereunder, but, rather Purchaser shall remain fully bound by the terms and conditions of this Agreement, jointly and severally together with Purchaser's assignee. Any assignee

4928-1884-5318, v. 2

of Purchaser, or any subsequent assignee, shall not be permitted to assign its rights hereunder in whole or in part without the prior written consent of Seller in each instance, which consent may not be unreasonably withheld, delayed or conditioned.

(b)     <u>Time</u>.  If a time period would expire on a weekend day or a weekday that is not a full business day, the time period will be extended to the next weekday that is a full business day.

(c)     <u>Attorney Fees.</u>  In the event either party commences litigation to enforce the terms of this Agreement, including without limitation, forfeiture, specific performance, or any claim for damages caused by a default of a party, and/or in defending any proceeding to which Purchaser or Seller is made a party to any legal proceeding as a result of the acts or omissions of the other party, the prevailing party shall be entitled to its reasonable costs and attorney's fees from the non-prevailing party.

(d)     <u>Amendment</u>.  No provision of this Agreement may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement thereof is sought, and then only to the extent set forth in the instrument.

(e)     <u>Governing Law</u>.  This Agreement will be governed by, and construed in accordance with, the law of the State of Illinois.

(f)     <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same Agreement.  Receipt of an executed signature page to this Agreement by facsimile or other electronic transmission shall constitute effective delivery thereof.

(g)     <u>Binding Effect</u>. This Agreement will be binding on and will inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and permitted assigns.

(h)     <u>Exhibits</u>. All of the exhibits attached to this Agreement are incorporated herein, and made part of, this Agreement.

(i)     <u>No Waiver</u>. Failure by either party hereto at any time to require performance of any provision of this Agreement shall not limit that party's right to enforce the provision, nor shall any waiver of any breach of any provision be a waiver of any succeeding breach of any provision or a waiver of the provision itself or any other provision.

[THE REMAINDER OF THIS PAGE HAS BEEN LEFT BLANK INTENTIONALLY.
ALL SIGNATURES APPEAR ON THE FOLLOWING PAGE.]

IN WITNESS WHEREOF, this Agreement has been executed as of the date first above appearing.

| **PURCHASER:** | **SELLER:** |
|---|---|
| Jero Holdings LLC, a New York limited liability company | OLD TOWNE APARTMENTS OWNER, LLC, an Illinois limited liability company |
| By: _____ | By: _____ |
| Its: _____ | Its: _____ |
| Printed Name: _____ | Printed Name: _____ |

**Exhibit A**

**LEGAL DESCRIPTION**

PART OF LOTS 26, 28 AND 31 OF COUNTY CLERK'S DIVISION OF PART OF SECTION 29, TOWNSHIP 16 NORTH, RANGE 5 WEST OF THE THIRD PRINCIPAL MERIDIAN, SANGAMON COUNTY, ILLINOIS, SAID PART BEING FURTHER DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF LOT 26 IN SAID COUNTY CLERK'S SUBDIVISION; THENCE SOUTH 00 DEGREES 00 MINUTES 56 SECONDS WEST 191.60 FEET TO THE SOUTHEAST CORNER OF SAID LOT 26, THENCE NORTH 89 DEGREES 30 MINUTES 46 SECONDS EAST ALONG THE NORTH LINE OF LOT 31 IN SAID SUBDIVISION, 335.00 FEET; THENCE SOUTH 00 DEGREES 00 MINUTES 56 SECONDS WEST ALONG THE EAST LINE OF SAID LOT 31, A DISTANCE OF 411.00 FEET; THENCE SOUTH 89 DEGREES 30 MINUTES 46 SECONDS WEST; 335.00 FEET TO THE EAST LINE OF LOT 28 IN SAID SUBDIVISION; THENCE SOUTH 00 DEGREES 00 MINUTES 56 SECONDS WEST; 162.73 FEET; THENCE SOUTH 89 DEGREES 30 MINUTES 46 SECONDS WEST, 290.17 FEET; THENCE SOUTH 00 DEGREES 00 MINUTES 56 SECONDS WEST 249.59 FEET TO THE NORTH RIGHT OF WAY LINE OF WEST JEFFERSON STREET; THENCE NORTH 67 DEGREES 42 MINUTES 00 SECONDS WEST ALONG SAID NORTH RIGHT OF WAY LINE, 232.49 FEET; THENCE NORTH 21 DEGREES 31 MINUTES 45 SECONDS WEST, A DISTANCE OF 61.55 FEET; THENCE NORTH 00 DEGREES 51 MINUTES 09 SECONDS WEST ALONG THE EAST RIGHT OF WAY OF BRUNS LANE, 523.53 FEET TO THE SOUTH LINE OF LOT 27 IN SAID SUBDIVISION; THENCE SOUTH 89 DEGREES 54 MINUTES 34 SECONDS EAST. 254.85 FEET TO THE SOUTHEAST CORNER OF SAID LOT 27; THENCE NORTH 0 DEGREES 40 MINUTES 26 SECONDS EAST, 155.02 FEET TO THE SOUTH LINE OF LOT 26 IN SAID SUBDIVISION, BEING ALSO THE NORTHEAST CORNER OF SAID LOT 27; THENCE SOUTH 89 DEGREES 30 MINUTES 46 SECONDS WEST ALONG SAID SOUTH LINE, 0.47 FEET; THENCE NORTH 00 DEGREES 00 MINUTES 50 SECONDS EAST, 192.38 FEET TO THE NORTH LINE OF SAID LOT 26, BEING ALSO THE SOUTH RIGHT OF WAY LINE OF KARL LANE; THENCE NORTH 89 DEGREES 40 MINUTES 21 SECONDS EAST ALONG SAID SOUTH RIGHT OF WAY LINE, 280.00 FEET TO THE POINT OF BEGINNING.
EXCEPT THE COAL AND OTHER MINERALS UNDERLYING THE SURFACE OF SAID LAND AND ALL RIGHTS AND EASEMENTS IN FAVOR OF THE ESTATE OF SAID COAL AND MINERALS.

SITUATED IN SANGAMON COUNTY, ILLINOIS.

Commonly known as 700 Bruns Lane, Springfield, Illinois 62702

P.I.N. 14-29.0-176-026; 14-29.0-177-022

4928-1884-5318, v. 2